**IT IS ORDERED as set forth below:**

**Date: August 1, 2017**

Wendy L. Hagenau

**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>BAY CIRCLE PROPERTIES, LLC, et al.,<br><br>Debtor. | CASE NO. 15-58440-WLH<br>CHAPTER 11 |
| SEG GATEWAY, LLC and<br>GOOD GATEWAY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BAY CIRCLE PROPERTIES, LLC,<br>CHITTRANJAN K. THAKKAR, and<br>JON E. TAYLOR,<br><br>Defendants. | ADVERSARY PROCEEDING<br>NO. 16-05334-WLH |

**ORDER GRANTING DEFENDANT BAY CIRCLE PROPERTIES, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter comes before the Court on Defendant Bay Circle Properties, LLC's ("Bay Circle") Motion for Partial Summary Judgment ("Motion") (Docket No. 28). The Court has

jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334, and Plaintiffs and Bay Circle have admitted this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H) and (K).

## UNDISPUTED FACTS[1]

In 2010, Plaintiffs Good Gateway, LLC ("Good Gateway") and SEG Gateway, LLC ("SEG Gateway") became involved in litigation in Florida State Court with Chittranjan Thakkar ("Thakkar") and other individuals and corporate entities connected to a real estate development project in Florida ("Florida Litigation"). Bay Circle was not involved with the Florida Litigation in any capacity. On October 3, 2014, the Florida State Court entered judgments in the amount of $12,000,000 in favor of Plaintiff SEG Gateway and $2,500,000 in favor of Plaintiff Good Gateway, against Thakkar individually as well as other defendants in the Florida Litigation.[2] Approximately two months after entry of the judgments in the Florida Litigation, the Plaintiffs recorded Writs of Fieri Facias ("Fi Fa's") in Gwinnett County, Georgia. At the time, Thakkar owned property located at 6600 and 6610 Bay Circle, Norcross, Gwinnett County, Georgia ("Property") in equal part with his wife, Saloni Thakkar. Plaintiffs do not have a judgment against Saloni Thakkar. The entire Property was subject to existing liens of Wells Fargo Bank N.A. ("Wells Fargo") in excess of $22 million. The filing of the Fi Fa's impressed a lien on Thakkar's one-half interest in the Property, subordinate to the Wells Fargo liens.

On May 1, 2015, Thakkar and his wife executed a limited warranty deed ("Deed"), conveying the Property to Bay Circle. The Deed stated that the transfer was made subject to certain encumbrances including, among others, Plaintiffs' Fi Fa's and the liens of Wells Fargo. Wells Fargo's claim was also secured by property held by other entities connected to Thakkar,

---

[1] Plaintiffs failed to respond to Bay Circle's Statement of Undisputed Facts. Pursuant to BLR 7056-1(a)(2), "All material facts contained in the moving party's statement that are not specifically controverted in respondent's statement shall be deemed admitted."

[2] The judgment debtors appealed the judgments entered in the Florida Litigation, and the judgments were affirmed by the Fifth District Court of Appeals. See Case No. 15-58440, Docket No. 697.

specifically DCT Systems Group, LLC, Sugarloaf Centre, LLC, Nilhan Developers, LLC, and NRCT, LLC. On May 4, 2015, each of these entities and Bay Circle filed petitions for relief under Chapter 11 of the Bankruptcy Code; the cases were later administratively consolidated under Case No. 15-58440. Following the filing of the bankruptcy cases, Wells Fargo sold its interest in the loans to Bay Point Capital Partners, LLC ("Bay Point").

Plaintiffs filed this adversary proceeding on November 30, 2016, alleging (1) the transfer of the Property should be avoided under the Georgia Uniform Fraudulent Transfer Act[3] ("UFTA") (Count I); (2) Thakkar's attorney, Defendant Jon Taylor, aided and abetted the fraudulent transfer of the Property (Count II); (3) Jon Taylor and Thakkar engaged in conspiracy to commit a fraudulent transfer (Count III); (4) the Property never became property of Bay Circle's bankruptcy estate because of the alleged fraudulent transfer (Count IV); and (5) the validity and extent of Plaintiffs' liens on the Property should be determined (Count V) ("Complaint") (Docket No. 1). After the adversary proceeding was filed, Bay Circle filed a motion in the underlying bankruptcy case to sell the Property to satisfy a portion of the debt held by Bay Point. The Court entered an order on February 14, 2017 authorizing the sale to Bay Point free and clear of all encumbrances, for a sale price of $5,350,000 (Case No. 15-58440, Docket No. 590). On March 1, 2017, Bay Circle filed the Motion, seeking summary judgment on Counts I, IV and V and arguing, *inter alia*, the transfer of the Property is not subject to the UFTA because the Property was fully encumbered at the time of the transfer and because the transfer was expressly subject to Plaintiffs' liens. Plaintiffs filed a response arguing further discovery

[3] Effective July 1, 2015, the Act's name was changed to the Uniform Voidable Transactions Act. The amendments which became effective July 1, 2015 do not affect this opinion as the UFTA only applies to transfers made or obligations incurred on or after July 1, 2015. See Callaway Blue Springs, LLLP v. West Basin Capital, LLC, 2017 WL 2417779, at *4 (Ga. Ct. App. June 5, 2017).

would be needed to determine the true value of the property and that Thakkar's conduct warranted various forms of equitable relief (Docket No. 35).[4]

**ANALYSIS**

*Summary Judgment*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056(c). "The substantive law [applicable to the case] will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The party moving for summary judgment has "the initial responsibility of informing the…court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (citing Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553). What is required of the moving party, however, varies depending on whether the moving party has the ultimate burden of proof on the issue at trial.

> When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim' (cites omitted) in order to discharge this 'initial responsibility'.

[4] Plaintiffs incorporated their "Marshaling Motion", filed in the main case at Docket No. 625. The Marshaling Motion remains pending before the Court and nothing herein is intended to address it.

> Instead, the moving party simply may 'show—that is, point out to the…court—that there is an absence of evidence to support the nonmoving party's case. (cites omitted). Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.

Four Parcels of Real Prop., 941 F.2d at 1437 (citing Celotex, 477 U.S. at 323-31, 106 S.Ct. at 2553-57).

Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. Fed. R. Civ. P. 56(e). Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts. Hairston, 9 F.3d at 918. When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. Id.

*Count I –UFTA*

Defendant first moves for summary judgment on Count I of the Complaint. Count I seeks a finding that the transfer of Thakkar's interest in the Property was fraudulent under the UFTA, specifically O.C.G.A. §§ 18-2-74(a) and 18-2-75.[5] Section 18-2-74(a) provides that transfers are voidable if made

> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor
>
> > (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> >
> > (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

[5] The complaint is not brought by the Debtor or a trustee so 11 U.S.C. § 548 is not implicated.

Section 18-2-75, in turn, provides that a transfer is voidable where "the debtor made the transfer…without receiving reasonably equivalent value in exchange for the transfer…and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer…." § 18-2-75(a).

The underlying purpose of the UFTA is to prevent an owner of property from placing the property "beyond the reach of his or her creditors" or transferring property "to the prejudice of the creditor's legal rights or the legal rights of other persons, including subsequent purchasers." Freitag v. McGhie, 947 P.2d 1186, 1189 (Wash. 1997) (citing Rainier Nat'l Bank v. McCracken, 615 P.2d 469 (Wash. App. 1980)). Critical to any inquiry under the UFTA is whether a "transfer" occurred. The definition of "transfer" is limited to an "asset" or an interest in an "asset". O.C.G.A. § 18-2-71(16). To determine whether a "transfer" occurred, the Court must therefore consider whether the property transferred qualifies as an "asset" under the statute. See Wallin v. Wallin, 2017 WL 2180584, at *3-4 & n.17 (Ga. Ct. App. May 18, 2017) (citing Safari v. RES-MS Bayfront, LLC, 333 Ga. App. 164, 165 (2015)). "Asset" is defined in the UFTA as "property of a debtor" but specifically excludes any "[p]roperty to the extent it is encumbered by a valid lien…." O.C.G.A. § 18-2-71(2)(A). Therefore, to the extent the property transferred is encumbered by a valid lien, the transfer cannot fall within the scope of the UFTA, even if the property was "transferred with nefarious intent." Wallin, 2017 WL 2180584, at *4. The relevant date for determining a property's value and whether it is an asset in the context of the UFTA is the time of transfer. Target Corp. v. Amerson, 326 Ga. App. 734, 740 n.22 (2014).

Bay Circle argues that the transfer of the Property does not fall within the scope of the UFTA because the Property cannot be considered an "asset" within the meaning of the statute. First, in support of its argument, Bay Circle directs the Court to an affidavit from Thakkar, which states the Property was valued between $5 and $6 million at the time of transfer and the Wells Fargo liens exceeded $20 million during that same time period. It is undisputed the Property sold for $5,350,000 during this case, which supports Thakkar's estimate. Plaintiffs state the

valuation in the Thakkar affidavit is both self-serving and insufficient for a finding that the Wells Fargo lien exceeded the Property value, and that additional discovery is needed to determine the actual value of the Property. Plaintiffs did not provide any contrary evidence to rebut Thakkar's affidavit, so the Court can accept Bay Circle's valuations. Plaintiffs also argue the Court should "marshal" assets of other debtors in the underlying bankruptcy case and determine the total value of the entire collateral pool to be in excess of Wells Fargo's liens, leaving an "asset" which could be subject to transfer under the UFTA. The Court need not address the marshaling argument here because Bay Circle's next point controls the outcome.

Bay Circle argues that the value of the Property need not be determined in order to grant summary judgment to Bay Circle. The definition of "asset" excludes property to the extent it is encumbered by a valid lien and Plaintiffs' judgments qualify as a valid lien. A "lien" is defined in the UFTA to mean "a charge against or an interest in property to secure payment of a debt or performance of an obligation and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common law lien or a statutory lien." O.C.G.A. § 18-2-71(9). So, even if the value of the Property exceeded the amount of the Wells Fargo liens, such that Plaintiffs' liens had some value, the Property still is not an "asset" the "transfer" of which may be avoided because the Property is encumbered by Plaintiffs' liens. Thus, the Property was either fully encumbered by Wells Fargo's liens as the undisputed facts show and thus not an asset, or the Property was encumbered by Wells Fargo's <u>and</u> Plaintiffs' liens, and thus still not an asset because of the liens. Plaintiffs have pointed to no evidence that the value of the Property exceeds the combination of Wells Fargo's and Plaintiffs' liens, but if it did, Plaintiffs would obviously have suffered no damage by the transfer. The UFTA's definition of "asset" to exclude encumbered property is consistent with the long held view that a transfer of encumbered property is

> not fraudulent as to a creditor whose debt was secured by judgment or other lien on the land. Necessarily, the grantee takes subject to the lien, and the creditor may pursue the land just as if it had been conveyed to one who purchased in good faith for a full consideration. The prior lien creditor may follow the land, irrespective of changes in the title, whether honest or dishonest.

Appeal of Haak, 100 Pa. 59, 62 (1882).  Even if the transferring debtor had a fraudulent intent, that intent alone is not enough to establish a fraudulent conveyance.  "[T]here must also be a resulting diminution in the assets of the debtor available to creditors."  Richman v. Leiser, 18 Mass. App. 308, 312; see also Ed Peters Jewelry Co. Inc. v. C & J Jewelry Co., Inc., 124 F.3d 252, 262 (1st Cir. 1997).

The Property was conveyed subject to the judgment lien of Plaintiffs and the transfer effected no diminution in the value of Plaintiffs' lien.  To the extent of the encumbrances on the Property, the Property is not an asset for which a creditor can bring a fraudulent conveyance action under the UFTA.  Whether the Property was worth $5 million or $6 million, and therefore Plaintiffs' judgment liens had zero value, or whether the Property was worth more than the amount owed on the Wells Fargo liens, thus providing some value to Plaintiffs' liens, the liened portion of the Property was not an asset that was transferred.  Since the transfer fully protected Plaintiffs' liens, no claim for fraudulent conveyance exists.

*Count IV – Determination of Property of the Estate*

Bay Circle also seeks summary judgment on Count IV.  Count IV seeks a determination that the Property is not part of Bay Circle's bankruptcy estate based upon the fraudulent conveyance alleged in Count I.  Property of the estate is broadly defined in 11 U.S.C. § 541 and includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  As of the commencement of the Debtor's bankruptcy case here, it held legal title to the Property as well as possession thereof.  Even if an alleged fraudulent conveyance could remove property from the estate, here the alleged voidable transfer was only as to a one-half interest in the Property.  As such, the Property was property of the estate of the Debtor, even if the transfer to the Debtor of Thakkar's one-half interest was subsequently set aside as fraudulent.  But, because the Court has determined that the transfer cannot be a fraudulent conveyance under the UFTA, no basis exists to argue the Property is not part of Bay Circle's bankruptcy estate.  Therefore summary judgment is warranted in Bay Circle's favor on Count IV.

*Count V – Determination of Extent and Validity of Liens*

Finally, Bay Circle seeks summary judgment on Count V. Count V seeks a determination of the extent and validity of Plaintiffs' liens against the Property. In the Motion, Bay Circle argues that Count V should be barred as moot given the sale of the Property free and clear of all encumbrances under 11 U.S.C. § 363(f). See Sale Order, Case No. 15-58440, Doc. No. 590. The Court made a determination as to the extent and validity of Plaintiffs' liens in the supplemental sale order issued in the underlying bankruptcy case. See Supplemental Order, Case No. 15-58440, Doc. No. 591. After finding that the $5.35 million purchase price met or exceeded the value of all liens on the property, the order stated:

> The Court notes further the first lien on the property is $15 million and there is no evidence or contention that the value of the property exceeds $15 million so as to provide any value to the liens of [Good Gateway] and [SEG Gateway]. As the liens of [Good Gateway] and [SEG Gateway] on a one-half interest in the [Property] have zero value, Section 363(f)(3) has been satisfied.

Plaintiffs appealed the Sale Order and the Supplemental Order; the appeal was subsequently dismissed with the consent of all parties. See Good Gateway, LLC v. Bay Circle Properties, LLC, 17-CV-00740-RWS, Docket Nos. 16-19. With the appeal dismissed, the Court's finding in the Supplemental Order that Plaintiffs' liens had no value at the time the Property was sold free and clear of all encumbrances stands. Therefore, summary judgment is granted to Defendant Bay Circle on Count V.

*Other Equitable Arguments*

In the Motion, Bay Circle also addresses Plaintiffs' marshaling argument, which was not plead in the Complaint but was raised at a hearing in the underlying bankruptcy case as a potential equitable solution to Plaintiffs' concerns. Bay Circle argues that marshaling cannot apply in the current case because Bay Circle does not own any of the other collateral that was subject to the Wells Fargo liens, and even if marshaling did apply Bay Circle is entitled to summary judgment on the UFTA claim. In response, Plaintiffs argue that the UFTA expressly provides for certain equitable relief, specifically in the form of a replacement lien. In addition to

marshaling, Plaintiffs specifically reference equitable provisions under the UFTA, including O.C.G.A. §§ 18-2-77(a)(2) and 18-2-82, and also mention 11 U.S.C. § 548.

As an initial matter, Plaintiffs' reliance on sections 18-2-77 and 18-2-82 for equitable relief in this case is misplaced. The Court has already determined, due to the evidence of the liens encumbering the Property at the time of transfer and the fact the transfer was made subject to Plaintiffs' lien, that the UFTA does not apply to this transfer. Additionally, the attachment remedy sought by Plaintiffs under section 18-2-77(a)(2) specifically applies to "other property of the transferee". The transferee is Bay Circle, which has no other property. Finally, Plaintiffs' reliance on section 548 is fruitless given its inapplicability to the present case and Plaintiffs' inability to bring such a claim.

The Court notes that Plaintiffs have filed a motion in the main bankruptcy case that articulates their theory for equitable relief under the doctrine of marshaling, to which the debtors (including Bay Circle) have responded (Case No. 15-58440, Docket Nos. 624 & 672). Given that the matter is fully briefed in the main case, the Court finds it is more appropriate to consider the matter there. The Court also finds amending the complaint to add the remaining equitable claims in this adversary proceeding would be futile given the reasoning above.

## CONCLUSION

Based on the foregoing, it is hereby

**ORDERED** that Bay Circle's Motion is **GRANTED**. Summary judgment is granted in favor of Bay Circle on Counts I, IV and V of the Complaint.

The clerk is directed to serve a copy of this order on Plaintiffs' counsel and counsel for the Bay Circle.

**END OF DOCUMENT**

**DISTRIBUTION LIST**

Walter E. Jones
Balch & Bingham, LLP
30 Ivan Allen Jr. Blvd NW, Ste 700
Atlanta, GA 30308

John A. Christy
J. Carole Thompson Hord
Jonathan A. Akins
Schreeder, Wheeler & Flint, LLP
1100 Peachtree St NE, Ste 800
Atlanta, GA 30309-4516